UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANTONIO RIAL Jr., <br><br> Petitioner, <br><br> v. <br><br> STEVE SINCLAIR, <br><br> Respondent. | Case No.  C10-5598RBL/JRC <br><br> REPORT AND RECOMMENDATION <br><br> **January 7, 2011** |

This habeas corpus action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(A) and (B) and Local Magistrate Judge's Rules MJR 3 and MJR 4.

Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254, from a state conviction for one count of first degree murder with a firearms enhancement (ECF No. 10, Exhibit 1).  The conviction is from the Cowlitz County Superior Court.  Petitioner was sentenced to 422 months incarceration.

REPORT AND
RECOMMENDATION - 1

This action should be dismissed with prejudice because the action was filed one hundred and twenty five days after the statute of limitations for filing a habeas corpus action had run.  See 28 U.S.C. 2244 (d) (1)

## FACTS

The Washington Court of Appeals summarized the facts of Mr. Rial's crime as follows:

> Nicklis [footnote omitted] Marston and Antonio Rial had been acquaintances and friends for a couple of years. And, at separate times, both Marston and Rial had been involved in a relationship with Katherine Weir. In 2005, a son was born to Marston and Weir. At the hospital, Rial tried to congratulate Marston on the birth of his son. But Marston refused his offer of congratulations and walked away.
>
> Thereafter, the relationship between Marston and Rial began to sour. Marston and Rial were involved in several altercations. Weir's mother, Corena Weir, described one of these altercations:
>
>> Uh, Nick came over he-him and Leto came over, and they were harassing Tony. And they went outside and they were scuffling around. Tony was on his own. Nick had Leto. Leto proceeded to go to the trunk of his car, and grab for a gun.
>>
>> This is when, uh, Brandon Davis walked up and said, no, this ain't gonna happen. It's gotta stay mutual. I'm both your friends and this can't be. And this is when he took the gun from Leto and-and the fight broke-broke the fight up.
>
> 3A RP at 518-19.
>
> The next day after this altercation, several people, including Marston, "showed up" at Richard Barker's house in Longview. 2 RP at 184-85. They were working on a car in the garage, playing pool in the garage, and talking with each other. Rial stopped by the house to pick up a bike frame from one of his friends and confronted Marston. After a quick conversation with Marston, Rial took the bike frame and left.
>
> Rial returned to Barker's house later that afternoon. Barker greeted him; but Rial failed to acknowledge him and walked straight into the garage. Then, shortly after Rial had gone through the garage door, Barker heard three or four gunshots. Barker's sister, Stacy Barker, heard screaming. A few people ran out of the garage, saying that Rial had shot Marston. Barker and his sister called 911. Two bullets struck Marston causing his death.

REPORT AND
RECOMMENDATION - 2

Meanwhile, Rial fled the scene. He approached a friend, Richard White, who was working on his car. Rial pointed a gun at him and told him to drive to "somewhere safe." 4A RP at 841. Rial placed the gun under the car seat. White then drove to Oregon, where his family and friends lived.

Once in Oregon, White removed the gun from the car and hid it under a rock. Eventually, Steve Johnson, one of Marston's friends, retrieved the gun. [court's footnote 2. Later, Johnson and several other people beat up Rial.] Johnson took the gun to Longview and "Joey or some cat was supposed to give it to the cops." 3A RP at 617. Ultimately, the Longview Police Department located the gun, finding that the profile of a DNA sample located on the gun was consistent with the profile of Rial's DNA sample. And forensic analysis confirmed that the bullets that killed Marston had been fired from the recovered gun.

A few days after the shooting, the Longview Police Department received an anonymous tip that Rial was walking along a road in Oregon. The Columbia County Sheriff's Office picked up Rial, who was subsequently transported to a hospital for medical treatment. Then, after Rial had been transferred back to the Columbia County jail, detectives from the Longview Police Department interviewed Rial. Rial was unable to remember much of what happened before, during, or after the shooting.

The State charged Rial with first degree murder while armed with a firearm. Before his jury trial, FN3, Rial's defense counsel notified the trial court that Johnson, one of the State's witnesses, was his former client. Rial's defense counsel asked the trial court "to appoint separate counsel to cross-examine him and deal with him as a witness in the case." 1 RP at 140. And the trial court agreed with his suggestion.

[court's footnote 3]. (Also, before his jury trial, the trial court admonished Rial:

> Mr. Rial, I noticed that you are tending to react to some things that go on. You know, to some degree, that's natural. All right. That's going to happen. I caution you, one, that if it gets extreme, I will take – I'll send the jury out and we'll talk about it. Two, it may actually damage your case.
>
> So, you know, you need to-as-remain as poker-faced as possible, everybody in the courtroom, because the jury needs to decide this case solely on the evidence, and the evidence presented in open court. All right.

1 RP at 145).

REPORT AND
RECOMMENDATION - 3

     Thus, the trial court: (1) partially disqualified Rial's trial counsel and (2) limited the substitute counsel from inquiring about the newly endorsed witness from Rial's trial counsel. And just before Johnson testified, the trial court appointed substitute counsel to represent Rial solely for the purpose of cross-examining Johnson. The substitute counsel then advised the trial court:

> [O]bviously the reason for my first contact with [Johnson] today is, I'm relatively new to getting into this matter. And so I wanted to just familiarize myself with him and what his expected testimony was today in light of the conflicting reports that I have seen with respect to the investigators and the officers that have already talked to Mr. Johnson.

3A RP at 603.

     Ultimately, the jury found Rial guilty as charged. The trial court sentenced Rial to a standard range sentence of 422 months confinement. Rial timely appealed. Under RAP 9.11 we remanded to the trial court for an evidentiary hearing to determine whether an actual conflict of interest existed between Rial and his counsel. The trial court concluded that no actual conflict existed.

(Washington Court of Appeals Opinion, ECF No. 10, Exhibit 2).

## **PROCEDURAL BACKGROUND**

Petitioner filed a timely appeal (Appeal brief, ECF No 10, Exhibit 3). His appeal was denied by the Washington State Court of Appeals (Opinion, ECF No. 10, Exhibit 2). A motion for reconsideration was denied and petitioner sought review in the Washington State Supreme Court (Petition for review, ECF No. 10, Exhibit 7). The Washington State Supreme Court denied review August 5, 2008. (Order, ECF No. 10, Exhibit 8). The time for filing a petition for certiorari in the United States Supreme Court expired ninety days later on November 3, 2008. Thus, for purposes of federal review, direct review ended November 3, 2008. The one-year time limit for filing a federal habeas corpus petition began to run the next day -- November 4, 2008. See, 28 U.S.C. 2244 (d)(1)(A).

Two hundred and seventy one days later, on July 31, 2009, petitioner filed a personal restraint petition in the Washington State Courts. The filing of this petition tolled the running of

REPORT AND
RECOMMENDATION - 4

the one-year time frame. 28 U.S.C. § 2244(d)(2); Artuz v. Bennett, 531 U.S. 4 (2000). The Washington State Court of Appeals denied the petition on January 12, 2010 (Opinion, ECF No. 10, Exhibit 13). Petitioner did not seek review in the Washington State Supreme Court.

The time remaining on the one-year federal time frame began to run again on January 13, 2010. Petitioner had ninety-four days to file his petition, which would constitute the balance of the one year period that was tolled during the pendency of the personal restraint petition. The time for filing a federal habeas corpus petition expired ninety-four days later, on April 16, 2010. The petition in this case was filed on August 19, 2010 -- one hundred and twenty five days late.

## **EVIDENTIARY HEARING NOT REQUIRED**

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing in this court shall not be held unless the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, this court concludes that there is no reason to conduct an evidentiary hearing.

## STANDARD OR REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254 (a) (1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984);

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

Federal habeas corpus petitions are subject to a statue of limitations under the 1996 amendments to 28 U.S.C. § 2244(d), as part of the Antiterrorism and Effective Death Penalty (correct formatting issue)Act ("AEDPA"). 28 U.S.C. § 2244(d) provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
> (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;

REPORT AND
RECOMMENDATION - 6

   (B) the date on which the impediment to filing an application created by State action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
   (C) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

  (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Pursuant to 28 U.S.C.A. § 2244(d)(1)(A), the limitation period begins on the date on which the state court judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. Ordinarily, this is when the U.S. Supreme Court disposes of the case on a direct appeal from the person's state court conviction, or, if there has been no application to the Supreme Court for certiorari, 90 days from the final judgment of the highest state court on the direct appeal. In this case that would have been November 4, 2008. Two hundred seventy-one days later petitioner filed a personal restraint petition, thus tolling the running of the statute. 28 U.S.C. 2244 (d) (2). After the petition was dismissed on January 12, 2010, the one-year time frame began to run again and it ended ninety-four days later -- on April 16, 2010. The petition was filed one hundred and twenty-five days late -- on August 19, 2010.

Petition has made no argument that he is entitled to statutory or equitable tolling and did not respond to the answer. The court concludes that this petition is untimely and should be DISMISSED.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C.

REPORT AND
RECOMMENDATION - 7

§ 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

## CONCLUSION

This petition should be dismissed as time barred. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also, Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of de novo review by the District Court Judge. See 28 U.S.C. 636 (b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 7, 2011**, as noted in the caption.

DATED this 7th day of December, 2010.

J. Richard Creatura
United States Magistrate Judge